UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| FRANCISCO RIVERA, | : | |
| | : | |
| Plaintiff, | : | Case No.: |
| | : | |
| vs. | : | |
| | : | |
| EDAC TECHNOLOGIES CORPORATION; HANWHA AEROSPACE USA, LLC, | : | |
| | : | |
| Defendant. | : | January 28, 2021 |

Jury Trial Demanded

## COMPLAINT

Plaintiff, Francisco Rivera, by and through his attorneys, Sabatini and Associates, LLC, complaining of the defendants EDAC Technologies, Inc. and Hanwha Aerospace USA, LLC, respectfully alleges:

### PARTIES

1. Plaintiff, Francisco Rivera was and is a Connecticut citizen.

2. Defendant EDAC Technologies Inc. was a corporation organized and existing under the laws of the State of Wisconsin with a principal place of business located at 5 McKee Place, Cheshire, Connecticut 06410.

3. Defendant Hanwha Aerospace USA, LLC was and is a limited liability company organized and existing under the laws of the State of Wisconsin a principal place of business located at 5 McKee Place, Cheshire, Connecticut 06410.

4. Defendant Hanwha acquired defendant EDAC.

5. At all times material, plaintiff was an employee within the meaning of the ADA

1

Amendments Act of 2008 (ADAAA).

6.     At all times material, defendants were employers within the meaning of the ADAAA.

## JURISDICTION AND VENUE

7.     The Court has jurisdiction pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343 and this action is brought pursuant to: The Americans with Disabilities Act Amendments Act of 2008, cited as 42 U.S.C. §12101.

8.     This Court has personal jurisdiction over the Parties and venue is proper under 28 U.S.C. §1391(b) in that a substantial part of the events or omissions giving rise to the claim occurred in the State of Connecticut.

9.     The Court has pendent jurisdiction over the state law claims.

## FACTS

10.    Defendant EDAC employed plaintiff.

11.    Defendant hired plaintiff on or about March 12, 2018.

12.    Plaintiff's job position was Inspector.

13.    Plaintiff was qualified for the job.

14.    On or about June 18, 2018, plaintiff reported to Human Resources employee Alicia Philips that he had injured his back at work.

15.    Plaintiff also notified managerial employee Jimmy Disabella that had injured his back at work.

16.    Disabella suggested to plaintiff that he had not injured his back at work and that the injury could have been caused by something else.

17. Plaintiff went to the doctor for his injured back.

18. The doctor determined that plaintiff injured his back and elbows.

19. The doctor determined the injuries were job-related.

20. The doctor documented that the injuries were job-related.

21. The doctor determined that the injuries were caused by repetitive tasking at work.

22. The doctor diagnosed plaintiff with a lumbar strain, left lateral epicondylitis and right lateral epicondylitis.

23. The doctor placed physical restrictions on the plaintiff due to the injuries.

24. The physical restrictions included no lifting, pushing or pulling more than 15 pounds, no repetitive bending or twisting and limiting reaching with arms.

25. Defendant received notice of the fact that plaintiff saw a health care provider for the injuries and was placed on physical restrictions by the health care provider for the injuries.

26. Defendant further received the notice that workers compensation was covering the medical treatment.

27. Disabella received notice of plaintiff's physical restrictions.

28. In response, Disabella assigned different work to the plaintiff. Specifically, he assigned plaintiff work involving the removal of paper clips and staples from papers that were to be scanned.

29. This was repetitive work that plaintiff should not have been doing. Plaintiff explained this to Disabella. Disabella continued to have plaintiff do the work.

30. Plaintiff was assigned to do this work in a noisy area.

31. Plaintiff inquired about being provided with ear muffs to protect his ears from the noise and resulting damage to his hearing.

32. Disabella became irate and refused to provide plaintiff with ear muffs telling plaintiff that if he did not want to work there to let him know and he would get someone else.

33. Over the next couple of months, Disabella would ask plaintiff on almost a daily basis if the doctor had released plaintiff to full duty but also refused to accept the doctor's notes that plaintiff wanted to provide him with.

34. On or about 10, 2018, plaintiff went to human resources and spoke with Dave Russell who proceeded to tell plaintiff that they did not need him to be working where he had been working. He told plaintiff that he did not want to get a reputation as being injury-prone and that they would give him a bad reference for that. Russell told plaintiff to go to the doctor and request a release to return to work without restriction.

35. Due to the repetitive work on the light duty assignment, plaintiff began experiencing pain in his wrists.

36. On or about September 5, 2018, plaintiff notified Disabella about the wrist pain. Disabella stated that he did not care about his restrictions and that plaintiff could hand from the rafters.

37. Plaintiff interpreted the "hang from the rafters" remark as a threat.

38. On or about September 10, 2018, employees took hearing tests. After plaintiff took his hearing test the defendant summoned him to human resources office.

39. John Hughes, Head of Human Resources, told plaintiff that they needed someone who was capable of doing the job and that he could re-apply in the future like any other fully able candidate.

40. On September 10, 2018, defendant terminated plaintiff's employment.

41. At the time of the termination, plaintiff had physical restriction in place and was

4

classified with a light duty working capacity.

42. At the time of termination, plaintiff was under the care of health care providers for the injuries and was receiving treatment for the injuries.

43. The objective of the treatment was to sufficiently recover from the injuries so that he could resume his regular job.

44. Connecticut's Workers' Compensation Act requires to assign light duty, when available, to an employee who has been injured on-the-job and due to that injury has a light duty work capacity.

45. Plaintiff has not reached maximum medical improvement of his injuries at the time of the termination.

46. In other words, defendant did not even wait to see if plaintiff's medical treatment would improve his injuries to the extent that he would be able to return to his regular job.

47. Plaintiff can perform the essential functions of the job with or without a reasonable accommodation.

48. Defendant knew that under Connecticut's Workers' Compensation Act and injured worker is entitled to be "out on comp" for a period of time due to the job-related injury.

49. Defendant was on notice that plaintiff exercised one or more rights under Connecticut's Workers' Compensation Act.

50. Plaintiff's back and elbow injuries are a disability within the meaning of the ADA.

51. Plaintiff filed charges against the defendant EDAT with the EEOC on or about June 5, 2019.

52. Defendant Hanwha had actual or constructive notice of plaintiff's EEOC case and is liable for the discrimination and wrongful termination of the plaintiff.

53. Plaintiff received a right to sue letter from the EEOC on or about November 5, 2020. (Ex.1)

## FIRST COUNT
### (Disability Discrimination in Violation of the ADAAA)

1. Plaintiff repeats the allegations in paragraphs 1 through 53 above as if fully incorporated herein.

54. Defendants' actions violate The Americans with Disabilities Act Amendments Act of 2008, which prohibits discrimination on the basis of disability.

55. Defendant EDAT, by and through its agents and/or employees, violated the Americans With Disabilities Act, in one or more of the following ways:

(a) In that defendant interfered with plaintiff's privilege of employment on the basis of plaintiff's disability (actual or perceived as);

(b) In that defendant discriminated against the plaintiff in such a way that it adversely affected his status as an employee;

(c) In that defendant effectively terminated plaintiff's employment;

(d) In that defendant treated the plaintiff adversely different from similarly situated employees;

(e) In that defendant discriminated against the plaintiff for requiring a reasonable accommodation;

(f) In that defendant intentionally discriminated against the plaintiff.

56. As a direct and proximate result of defendant's unequal treatment and discrimination, plaintiff has been deprived of his employment and equal employment opportunities because of his disability.

57. As a further direct and proximate result of defendant's discrimination of the plaintiff, plaintiff has been deprived of income, wages, and benefits.

58. As a further result of defendant's termination and discrimination of the plaintiff, plaintiff has suffered emotional pain, suffering, embarrassment, shame, inconvenience, mental anguish, loss of enjoyment of life, impairment of his personal and professional reputation, damage caused by the Plaintiff's loss of insurances and savings and investment opportunities, and other pecuniary and non-pecuniary losses.

59. Plaintiff has suffered and will continue to suffer injuries and losses as a result of defendant's wrongful and discriminatory acts.

## SECOND COUNT
**(Failure to Provide Reasonable Accommodation in Violation of the ADA Amendments Act of 2008)**

1. Plaintiff repeats and re-alleges the allegations set forth above in Paragraphs 1 through 59 as though fully set forth herein.

60. Defendant, by and through its agents, servants, and/or employees, violated the ADA Amendments Act of 2008 in one or more of the following ways.

   (a) In that defendant failed to provide the plaintiff with a reasonable accommodation;

   (b) In that defendant denied the plaintiff a reasonable accommodation;

   (c) In that defendant failed to initiate an interactive reasonable accommodation process with the plaintiff;

   (d) In that defendant failed to engage in an interactive reasonable accommodation process with the plaintiff in good faith.

61. As a direct and proximate result of defendant's reasonable accommodation denial,

plaintiff has been deprived of work and equal employment opportunities because of his disability.

62. As a further direct and proximate result of defendant's discrimination of the plaintiff, plaintiff has been deprived of income and wages, and has been deprived of access of certain benefits to which he was entitled under defendant's employee benefits plan, and interest.

63. As a further result of defendant's failure to accommodate, plaintiff has suffered emotional pain, suffering, embarrassment, shame, inconvenience, mental anguish, loss of enjoyment of life, impairment of his personal and professional reputation, damage caused by the Plaintiff's loss of insurances and savings and investment opportunities, and other pecuniary and non-pecuniary losses.

64. Plaintiff has suffered and will continue to suffer harms and losses as a result of defendant's wrongful and discriminatory acts.

## THIRD COUNT
**(Workers' Compensation Retaliation/Discrimination in Violation of C.G.S. Sec. 31-290a)**

1. Plaintiff repeats and re-alleges each and every allegation set forth above and fully incorporates the allegations herein.

65. Defendant, by and through its employees and/or employees, violated C.G.S. Section 31-290a which prohibits retaliation and discrimination against an employee for exercising rights under Connecticut's Workers Compensation Act.

66. Defendant violated Connecticut General Statutes Section 31-290a in one or more of the following ways:

(a) In that defendant terminated plaintiff's employment as a result of plaintiff's exercise of rights under Connecticut's Workers' Compensation Act;

(b)  In that defendant retaliated against plaintiff for requesting light duty under Connecticut's Workers' Compensation Act;

(c)  In that defendant discriminated against the plaintiff on the basis of suffering a work-related injury and exercising his rights under Connecticut's Workers' Compensation Act.

67.  As a result of defendants' unlawful misconduct, plaintiff has been deprived of employment.

68.  As a result of defendant's unlawful conduct, plaintiff has been deprived of income and wages, and has been deprived of access of certain benefits to which he was entitled under defendant's employee benefit plan.

69.  As a further result of defendant's unlawful misconduct, plaintiff has suffered compensatory damages including emotional pain, distress, suffering, embarrassment, shame, inconvenience, mental anguish, loss of enjoyment of life, impairment of his personal and professional reputation, damage caused by the Plaintiff's loss of insurances and savings and investment opportunities, and other pecuniary and non-pecuniary losses.

70.  Plaintiff has suffered and will continue to suffer harms and losses as a result of defendant's unlawful conduct.

71.  Any and all non-discriminatory and non-retaliatory excuses to be offered, if any, by the defendant for the plaintiff's termination would be a pretext to mask unlawful discriminatory and/or retaliatory motive.

72.  Workers' compensation retaliation and/or discrimination was a motivating factor in defendant's decision to terminate plaintiff's employment.

## DEMAND FOR RELIEF

WHEREFORE, plaintiff prays for appropriate damages including: compensatory damages; damages for back pay, front pay, bonuses, personal days, lost pension/employee/retirement benefits, consequential damages, emotional distress; punitive damages; reasonable attorneys' fees; costs; interest; job reinstatement; damages pursuant to CG.S. Sec. 31-290a; prejudgment interest; for an injunction requiring the removal of any and all adverse information contained in plaintiff's personnel file; for a trial by jury; and for all other just and proper relief.

Dated:   January 28, 2021

*James Sabatini*
James V. Sabatini, Esq. ct19899
SABATINI AND ASSOCIATES, LLC
1 Market Square
Newington, CT 06111
Tel. No.: (860) 667-0839
Fax No.: (860) 667-0867
Email: jsabatini@sabatinilaw.com

ATTORNEY FOR PLAINTIFF

# EXHIBIT 1

EEOC Form 161-B (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| To: | Francisco Rivera<br>c/o James V. Sabatini, Esq<br>Sabatini and Associates, LLC<br>One Market Square<br>Newington, CT 06111-2992 | From: | Boston Area Office<br>John F. Kennedy Fed Bldg<br>15 New Sudbury Street, Room 475<br>Boston, MA 02203 |
|---|---|---|---|

[ ] On behalf of person(s) aggrieved whose identity is *CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 16A-2019-01415 | Jinny L. Miranda,<br>Investigator | (617) 865-3667 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA must be filed in a federal or state court **WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X] More than 180 days have passed since the filing of this charge.

[ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*[signature]*

Feng K. An,
Area Office Director

11/02/2020

*(Date Mailed)*

Enclosures(s)

cc: **EDAC TECHNOLOGIES**
c/o Director of Human Resources
275 Richard Street
Newington, CT 06111